MARTHA POWERS *et al.* v. ALBERT D. SCHARLING.

No. 15,249.    (92 Pac. 1099.)

SYLLABUS BY THE COURT.

EXECUTOR'S SALE — *Jurisdiction* — *Estoppel.* Whether or not, upon an application by an executor for an order to sell real estate to pay debts, a probate court has jurisdiction to determine a question of adverse title, a creditor of the estate who with full knowledge of all the facts accepts payment of his claim out of the proceeds of such a sale cannot be heard to deny the purchaser's title upon the ground that the testator before his death had conveyed the land to such claimant.

Error from Dickinson district court; OSCAR L. MOORE, judge. Opinion filed December 7, 1907. Affirmed.

*Robert H. Kane, G. W. Hurd,* and *E. A. Austin,* for plaintiffs in error.

*Thomas Dever,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: David Sibrell executed a will in which was incorporated the following provision:

"I desire and design to, and I do by this paper writing (both a will and a deed), create, convey to, and vest in, my beloved daughter, Harriet Campbell, a present interest and estate in and to all the estate of which I am now or shall be at the time of my death seized, or to which I am now or shall be then entitled, to the extent of one-half thereof, always, however, subject to the payment of the said debts, expenses and legacies heretofore mentioned, and also to a life-estate in me for and during the period of my natural life, and this present interest and estate I make upon a good, valuable and sufficient consideration from said Harriet Campbell, in addition to the consideration of natural love and affection I bear toward her."

A similar clause purported to convey to Harriet Campbell, as trustee for the benefit of Martha Powers, her sister, the other half interest in the real estate, subject to the same limitations. Sibrell died, and a subsequent will was duly probated. The personal property was insufficient to pay the indebtedness of the estate. At the time of his death Sibrell had no real estate other than an eighty-acre tract which he had owned when he made the first will. The executor applied for an order to sell this to pay debts. Martha Powers and Harriet Campbell appeared and resisted the application, on the ground that the land was theirs in virtue of the writing already described as incorporated in the earlier will. The order was made, however, and the land was sold for $725 to Albert D. Scharling, who received a deed and took possession. So much of this sum as was necessary was used in paying the claims allowed against the estate, including one of Martha Powers's for $49 and one of Harriet Campbell's for $32.

Thereafter Martha Powers and Harriet Campbell brought an action against Scharling to recover the

land, claiming that the instrument executed by Sibrell had at once vested a title in them and that the executor's deed was void. A demurrer to their petition was submitted, under an express stipulation that it should be sustained only in case such instrument was held to be wholly testamentary. The trial court sustained the demurrer, but upon proceedings in error the decision was reversed, this court holding that so far as the instrument related to real estate owned by Sibrell at the time of its execution it was contractual and irrevocable. (*Powers v. Scharling,* 64 Kan. 339, 67 Pac. 820.) A trial resulted in a judgment for the defendant, which was reversed upon the ground that competent evidence had been rejected. (*Powers v. Scharling,* 71 Kan. 716, 81 Pac. 479.) At a second trial it was agreed that all disputed facts should be submitted to the jury by special questions and that all other matter should be submitted to the court. Pursuant to this arrangement the jury made a number of findings of fact, but returned no general verdict. The court adopted these findings (with one exception, to be noted later), made some additional ones based upon the admissions of the parties and the undisputed evidence, and announced various conclusions of law fatal to a recovery by the plaintiffs. A judgment for the defendant followed, from which error is prosecuted.

The position of the plaintiffs is that the instrument signed by Sibrell vested in them upon its delivery, which was found by the jury to have taken place immediately upon its execution, a title to the land, subject only to Sibrell's life-interest and to what was in effect a lien for the payment of the charges against his estate; that no title was left in the testator to be sold by his executor, and that the only method available for the enforcement of the lien was by an equitable action in the district court. To this the defendant responds that whatever right the two daughters acquired was in subjection to a title remaining in their father as security for the payment of his debts, and that the exec-

utor's sale was properly made; or, if not, that the probate court had jurisdiction of the subject-matter and even if the order to sell was erroneous it was not void, and not having been appealed from is conclusive, not being open to collateral attack; and that at all events the plaintiffs, having accepted a part of the proceeds of the sale in satisfaction of their demands against the estate with a full knowledge of all the facts, are estopped to question the validity of the deed. The trial court sustained all of the defendant's contentions.

The argument against the right of the executor to sell the land is at least plausible. And if the title had in fact passed to Sibrell's daughters there is difficulty in giving the decision of the probate court to the contrary the effect of an adjudication. The usual rule is that probate courts cannot determine questions of title so as to conclude persons claiming adversely to the estate—that the power to decide what shall be done with property owned by a decedent does not include the power to decide what property the decedent owned. (11 Cyc. 796; 18 Cyc. 745; 11 A. & E. Encycl. of L. 1094; *Stewart v. Lohr,* 1 Wash. 341, 25 Pac. 457, 22 Am. St. Rep. 150; *Matter of Will of Walker,* 136 N. Y. 20, 32 N. E. 633.) A different view, however, is suggested in section 173 of Van Fleet's Collateral Attack, but the only case cited in its support turned upon the phraseology of the statute involved.

In *Amos, Adm'r, v. Livingston,* 26 Kan. 106, a question of adverse title was litigated in proceedings begun by an administrator for the sale of real estate, but the question of jurisdiction was not raised. In *Rogers v. Clemmans,* 26 Kan. 522, an administrator's sale of real estate was held to be absolutely void because the heirs derived title directly from the federal government and not through the intestate, and because of a want of notice. In *Coulson v. Wing,* 42 Kan. 507, 22 Pac. 570, 16 Am. St. Rep. 503, the first of these reasons was held to have been sufficient. The cases in-

volving the homestead right (*Fudge v. Fudge*, 23 Kan. 416) and the exemption of land from sale for a debt created while the title was in the government (*Watkins v. Mullen*, 62 Kan. 1, 61 Pac. 385, 84 Am. St. Rep. 372) turn upon a different question, adverse title not being involved. Even such provisions as that giving an administrator authority to sell lands conveyed by the deceased in fraud of creditors (Gen. Stat. 1901, § 2921) are commonly enforced by proceedings brought in a court having equitable jurisdiction. (18 Cyc. 692, note 60; *Barker v. Battey*, 62 Kan. 584, 64 Pac. 75.)

It will not, however, be necessary to decide the effect of the contractual matter inserted in the will or the extent of the jurisdiction of the probate court, for the judgment of the district court can be affirmed upon the proposition that the plaintiffs are not in a position to deny the defendant's title. It is a familiar and well-settled principle that one who with full knowledge of the facts accepts the benefits of a void judicial sale is thereby precluded from questioning its validity. (Freeman, Void Jud. Sales, 3d ed., § 50; *Meddis v. Kenney*, 176 Mo. 200, 75 S. W. 633, 98 Am. St. Rep. 496, and note citing other cases in that series.) Whether the principle is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important. It is really but an application of the homely proverb that one may not eat his cake and have it too. Decisions in which it has been applied to sales made by executors and administrators are collected in volume 11 of the American and English Encyclopædia of Law, at page 1124, and volume 18 of the Cyclopedia of Law and Procedure, at page 798. In the latter work the doctrine is thus expressed:

"One who has knowingly accepted and retained the purchase-money or a part thereof is thereby estopped from afterward attacking the sale or asserting title to the land, but it is necessary in order to work the estoppel that the person receiving the money should

have known at the time of the facts rendering the sale invalid, and that what was received was proceeds. of the sale." (Page 798.)

The Kansas case most nearly in point is *Crane v. Lowe,* 59 Kan. 606, 54 Pac. 666, where it was held that the acceptance of the payment of a legacy out of the proceeds of a void executor's sale of real estate prevented an heir from claiming the land. A creditor who accepts the payment of his debt out of the proceeds of his own property stands upon the same footing as a legatee or an heir who receives a legacy or distributive share of the estate from a like source. He may not enjoy the benefit of the sale and escape its. burden. Instances in which the rule has been invoked against a creditor do not seem to be common, but one is found in *Beard v. Cash et al.,* 32 La. Ann. 121, the first paragraph of the syllabus reading:

"A creditor of a succession who has received his. share of the proceeds of the sale of certain land belonging to the succession cannot be heard to claim the annulment of the sale, and to assert his title to the land."

The jury found that the plaintiffs at the time they presented their accounts against the estate did not know that the personal property left by Sibrell was. insufficient to provide payment for the claims which had already been allowed. The court, while not in so many words setting this finding aside, did so in effect by pronouncing it to be wholly unsupported by the testimony and contrary to the evidence. This action implied a finding by the court that the plaintiffs had such knowledge at the time referred to, and as the evidence has not been preserved such must be taken to be the fact. The court's statement also shows by express recitals that at the time these claims were filed two annual settlements had already been made by the administrator disclosing that the personalty of the estate had already been exhausted in the payment of prior demands, and inferentially that the plaintiffs

knew this to be true.  In support of the judgment it
may also be inferred that the plaintiffs knew there
were no other assets of any character from which they
might expect payment.  It therefore appears that they
demanded payment of their charges against the estate
knowing that no fund could be available for the pur-
pose except that produced by the sale of the real estate
which they now claim, and that they accepted in satis-
faction thereof money which they knew could only have
come and in fact did come from that source.  This
consideration would seem to preclude their attacking
the validity of the sale under any circumstances.

There is nothing, however, in the facts presented to
entitle them to any peculiar leniency of treatment or
to shield them from the full rigor of the rule stated,
if such a rule may ever be regarded as rigorous.  It is
beyond dispute that the interest of the plaintiffs in
the land was subject to the payment of the debts of
the estate, and that it was the province of the probate
court to see that such charge was enforced.  If a mis-
take was made in the method pursued it was through
a misconception of a doubtful matter of law.  No claim
is made that the sale was unfairly conducted or that
the price paid was inadequate.  The plaintiffs are
standing upon a technical right, and no substantial
injustice or hardship can result from holding them to
the ordinary standard of consistent conduct.  It is
true that the amount received and retained by each
was small in comparison with the value of the prop-
erty.  Yet it was enough to be substantial—it was not
merely nominal.  The rule that he who claims the bene-
fit of a transaction must take also its burden does not
proceed upon a theory of compensation, and its appli-
cation does not involve a weighing of the advantage
gained against that lost.

The judgment is affirmed.