No. 19,888.

JOHN W. STARK, *Appellee*, v. HUNTER M. MERIWETHER, *Appellant*, et al.

SYLLABUS BY THE COURT.

1. RIPARIAN RIGHTS—*Accretions to Land—Question of Fact.* Whether accretions have been formed from the main bank of a stream to an island in the channel or from the island to the bank is a question of material fact to be determined from the evidence, construed, of course, by reference to well-established principles governing the law of accretions. It is none the less a question of fact.

2. SAME—*Rule for Apportioning Accretions to Land.* The proper method or rule for apportioning accretions on rivers or other bodies of water between adjoining proprietors depends upon varying circumstances and conditions, so that it is impracticable to state a general rule that will apply in all cases.

3. SAME—*Rule Adopted by Trial Court—Approval.* On the facts stated in the opinion, *held*, that the adoption of a rule of apportionment between two adjoining proprietors by which each acquires a frontage on the new shore proportional to his frontage on the old one, by an extension of the original side lines, will not be disturbed.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed May 6, 1916. Affirmed.

*L. W. Keplinger, C. W. Trickett,* both of Kansas City, *R. E. Ball,* and *Hunter M. Meriwether,* both of Kansas City, Mo., for the appellant.

*Edward C. Little,* of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was in eject-ment. A jury was waived and the cause was submitted to the court. There was a judgment for plaintiff, with special find-ings of fact and conclusions of law. From the judgment the defendant appeals.

Silas Armstrong was the original patentee of a tract of land at the junction of the Kansas and Missouri rivers, containing nearly two hundred and fifty acres. Early in 1867 a great flood raised both rivers, and there was a gorge of ice which broke through the Armstrong tract, cutting a new channel for the Missouri river. There was at that time a suit pending in the district court of Wyandotte county for partition of the tract, and a survey was ordered by the court. In September, 1867, the commissioners reported that only about two hun-dred acres of the original tract was left, almost fifty acres having washed away or disappeared. The report was con-firmed and the, remainder of the tract was partitioned. Af-terwards a contract was made with James F. Joy to riprap the bank, which he did, completing the work within a few months. The survey, under which the partition was made, is known as the Miller survey. The north, or more properly speaking, the northeasterly line of this survey, was from 200 to 300 feet beyond the riprap bank.

The lands in dispute are a part of the Armstrong tract. The same property was involved in a case before this court in *Fow-ler v. Wood,* 73 Kan. 511, 85 Pac. 763. A part of the same gen-eral tract was involved in the more recent case of *Wood v. McAlpine,* which was decided in 1911 (85 Kan. 657, 118 Pac. 1060; rehearing denied, 86 Kan. 804, 805, 121 Pac. 916). The general location and immediate surroundings are shown in the map accompanying the opinion in *Fowler v. Wood,* supra, ex-cept that the land owned by plaintiff Stark is there designated as the James tract. Stark derives title by deed from Jane W. Stark to a piece of land 185 feet in width extending in a north-

easterly direction from the center of James street to low-water mark on the Missouri river. James street at this point runs northwest, so that Stark's land lies in a northeasterly direction riverwards. What is called the north line of his tract is Ohio avenue, running at right angles to James street and extending to the river. Meriwether, the defendant, owns lands immediately adjoining Stark's on the southeast, and also extending toward the river. Stark claims the lands in dispute as accretions to the main shore of the Missouri river. Meriwether contended in the court below, and still asserts, that the lands in dispute are not accretions to the main shore, but are accretions to an island in the Missouri river, spoken of as Howe island, to which Meriwether acquired title after long years of litigation with Howe.

The testimony in the case was voluminous and conflicting. It consisted of much oral testimony, in which numerous witnesses attempted from recollection to show the situation of the river at various times since 1867, dozens of maps, plats and photographs made at different periods and at various stages of the river, together with the pleadings, reports of special masters, findings and records in several suits in the federal courts, and records of the state courts in suits involving the lands in dispute and other lands similarly situated. From this great mass of conflicting testimony the trial court found that the land in controversy is not an accretion to an island in the Missouri river, but that it was formed by accretions to the mainland.

Jane Stark, through whom the plaintiff claims, and Meriwether were both parties to the action in *Fowler v. Wood,* supra, but they were fighting side by side, and nothing decided in that case can be said to be *res judicata* as between them.

The plaintiff alleged in his reply that Meriwether was estopped to claim that the lands in controversy were accretions to an island in the Missouri river, because of the position taken by him in former litigation. In support of these averments the plaintiff offered the records in the case of *Meriwether v. Fowler Land Association, John W. Stark, et al.,* in the United States circuit court of Kansas, and in *Meriwether v. Caskey, County Treasurer et al.,* in the same court, and in *Railroad Company v. Caskey, County Treasurer,* also in the federal court,

which were suits involving the disposition of $22,000 condemnation money paid into the hands of the county treasurer for the right of way of a railroad across lands, including those in controversy here. Meriwether and Stark were parties in all this litigation, as was also the state of Kansas, which appeared by the attorney-general. The Howes, who claimed the land was an accretion to an island in the Missouri river, were also parties. The state of Kansas asserted that the land claimed by Meriwether, and all the land between the state line, Ohio avenue and the riprap bank of the Missouri river, was an island in the Missouri river, belonging to Kansas. In each of these actions Meriwether alleged in his pleadings that the lands were accretions to the main land in Kansas. It further appears that as a result of that litigation Meriwether recovered about $20,000, and Jane W. Stark, mother of the plaintiff in this action, recovered her share of the condemnation fund.

The proof further showed that in a number of cases in the state courts in which Meriwether was a party, and which involved the title to or the possession of lands lying in the same general tract, Meriwether denied that there was an island in the river the accretions to which extended to the southeast side of Ohio avenue. In a cross-complaint filed September 5, 1904, in one of the cases in the federal court, Meriwether made the following averment: "Your orator states the fact to be the land was never any portion of any island in the Missouri river." In the same pleading he made this averment:

"In the year 1889, and for several years thereafter, there was an island located in the Missouri river several hundred feet east of the state line, . . . and accretions from the Kansas shore subsequently extended further north and east until they finally became connected with the said island."

In *Meriwether v. Fowler Land Association, John W. Stark, Jane W. Stark, S. K. Howe, et al.,* filed September 21, 1900, in the federal court, the bill in equity was sworn to by Meriwether, in which he set forth his claims to the lands and alleged that they were part of a large tract located in the state of Kansas, "all of which has been formed by accretions to the old south bank of the Missouri river."

The findings of the trial court are as follows:

"1. That the location of the land in controversy is shown on the map hereto attached, known and described in the evidence as the Coulter Map.

Since a time prior to 1869, and until 1888, the main channel of the Missouri river was along the old riprap bank (the right bank) of the Missouri river marked "Rip-Rap Bank" on said map. The distance along said riprap bank, from the mouth of the Kaw River to the State Line, was 3120 feet, of which the land then owned by Stark had a river frontage of 185 feet. The land then owned by Meriwether and those under whom he claims, lay immediately adjoining and below the Stark land and had a river frontage of 1560 feet.

"2. That in the year 1889, and the years immediately following, dikes were extended from the mouth of the Kaw river. The accumulation of deposit below said dikes then increased and grew in size and elevation. The main channel of the Missouri river changed to a point more than 1000 feet north of the old riprap bank, so that a new right bank of the Missouri river was formed, which was more than 1000 feet northerly from the old riprap bank, and soon after 1890, the island or islands east of and near the state line and the new land formed as aforesaid became connected up into one continuous body of land. The accretions commencing below the piling driven in to form the dike, and connecting with the mainland, extending easterly or down the Missouri river until it connected with or joined the island near the state line.

"3. The total acreage of new land gained from the river between the mouth of the Kaw river and the state line extended, and the old riprap bank, is eighty-seven and one-half acres, of which Woods and others recovered in the case of *Fowler v. Wood*, 35½ acres. The total area of the land between the extension of the southerly line of the Stark land and the state line, and the old riprap bank, is twenty-seven acres, that part extending between the southerly and northerly lines of the Stark land prolonged being six and three-tenths acres, and the remainder being twenty and seven-tenths acres.

"4. In the year 1889, there was and for several years had been an island in the Missouri river, sometimes called the Howe Island north and in front of the old original frontage claimed by Meriwether. At said date, in 1889, the more elevated part of this land was in Missouri and had trees growing thereon, of ten or twelve feet in height, also two houses were thereon and some portions of the land were enclosed with fences.

"5. The island mentioned in the evidence as a small island which appeared in the Missouri river in the year 1888, located on the further or northeast side of the deepest part of the main channel of the stream at a distance of approximately 200 feet from the right or south bank of the river, marked "B" on the Coulter map, never washed away, but the extension of the dikes at the mouth of the Kaw river and the resulting formation of new land at and below the mouth of said river, caused the current which theretofore flowed along the western part of said island, to flow on the other side of said island, leaving a line of low ground along the riprap bank which remained in that condition until the accretions which started at the mouth of the Kaw river gradually extended east and down the Missouri river, until it connected the Howe island and the main land into one body.

"6. Neither of the two islands before mentioned ever washed away, but they gradually came together, and by reason of the construction of the dikes at the mouth of the Kaw river, as hereinbefore stated and the extension of the islands and the deposits against the old bank, between the Stark land and the state line, there became and was a continuous formation of land between the upper end of the so-called Howe island and the mouth of the Kaw river, and the main current of the stream was changed, so as to run on the north side of said Howe island, instead of along the old riprap bank; but the said formation of new land extended from the dikes and mainland until it finally reached the island and was not formed by accretions to the island.

"7. For several years after all of the land in controversy had become permanent land, the old, original channel, which extended along or near the old riprap bank, remained lower than the land in controversy, and there was water during flood times to a considerable depth in front of that portion of the old riprap bank which was the original river boundary of plaintiff's land and directly between the land in dispute and the land claimed by plaintiff.

"8. The land in controversy is about eight hundred feet distant from, and is an accretion to the land as originally claimed by plaintiff, prior to the change in the location of the river channel.

"9. H. M. Meriwether, the defendant, was not in actual adverse possession of the land in controversy for the fifteen years prior to the bringing of this action.

"10. The defendant, H. M. Meriwether, was never a citizen or resident of the state of Kansas.

"11. The island sometimes called the Howe island never extended over into Kansas and the accretions from the state of Kansas did extend over into Missouri."

It is said by counsel for Meriwether in his brief that "where the court confines itself to the questions of pure fact as distinguished from mixed fact and law, the findings are substantially correct."     It is, however, one of the main contentions of the defendant that the trial court was in error in making the following finding:

"But the said formation of new land extended from the dikes and main land until it finally reached the island, and was not formed by accretions to the island."

It is strenuously urged that this is not a finding of pure fact, but one of mixed fact and law, and that it is erroneous because, it is said, the court had already positively found in its previous findings that the Howe-Meriwether island extended over into Kansas and never washed away. It is insisted that if the island extended over into Kansas at all, it covered the very

land in controversy. At this point counsel directs our attention to a number of photographs offered in evidence in proof of the fact that part of the old channel next to the riprap bank immediately in front of the Stark land did not fill up, but remained in existence for many years after the land in controversy and other land surrounding it was solid, usable land with trees of considerable size growing upon it. These exhibits were all in evidence before the trial court, with explanations from a number of witnesses showing the time when the various photographs were taken, the position of the camera and the stage of the river. Undoubtedly the trial court was far better able to weigh the evidence than we are.

We can not agree with counsel in his construction of the findings in respect of the location of the Howe-Meriwether island. His contention lays stress upon the language of the court in finding No. 4, that in 1889 the more elevated portion of this island was in Missouri and had trees growing thereon. Standing alone, the finding leaves an inference that the less elevated part of the island was in Kansas; but it is our duty to reconcile the findings if possible to do so. We think the inference relied upon is entirely overcome by the express finding No. 11, which reads:

"The island sometimes called the Howe Island never extended over into Kansas and the accretions from the State of Kansas did extend over into Missouri."

This finding is so explicit that it leaves no room for doubt as to what the court meant to find the fact to be. It is not a conclusion of mixed fact and law, but one of pure fact. Whether an accretion has been formed from the main bank of a stream to an island, or from the island to the bank, is always a question of fact, to be determined, of course, by reference to the law of accretions, but none the less it is a question of fact. Upon both questions, as to whether the Howe island extended into Kansas, and whether the lands in dispute were accretions to the main shore or to the island, there was abundance of evidence from witnesses which supports the findings of the court. There was a sharp conflict in the evidence, especially in the conditions testified to by witnesses from their recollections extending back a quarter of a century; but wholly aside from the former testimony of Meriwether himself and his

pleadings in various courts in relation to the same facts and conditions, there was evidence which sustains the court's findings. That the Coulter map, mentioned in the findings, shows a portion of the Howe island as extending across the state line into Kansas, we do not regard as conclusive of the fact. The court has made an express finding to the contrary, and there was evidence which contradicted the map in this respect. It is not necessary to decide in this case that defendant is estopped to assert the exact opposite of that contended for by him in former litigation. Perhaps he ought to be estopped. At all events, the court doubtless considered the evidence from the records of the previous litigation as some proof that the Howe island was never in Kansas, and that the lands in dispute are accretions to the lands of plaintiff. It is suggested that all the reclamation work by which the accretions were formed has been made at Meriwether's expense, toward which plaintiff has not contributed, and that plaintiff has already recovered more than his share of the lands. It may be that plaintiff's land has been benefited by the work which defendant Meriwether has carried on in his own interests, but with that we have nothing to do.

It is insisted that plaintiff failed to establish a title paramount to that of Meriwether; that the most that can be said is, he proved the land in dispute was an accretion generally, and wholly failed to show that it was an accretion to the part of the mainland owned by him. Because of the eighth finding, that the accretions started at a point several hundred yards upstream and worked south and down the river, it is said that "by no possibility could they have got to the Howe island without going over the land in controversy." We think the contention is based upon a narrow interpretation of the findings. The court, in substance, finds that the extension of dikes upstream started the formation of accretions all along the riprap bank of the river. Where they started or what originally caused them to form is not important. (*Fowler v. Wood*, 73 Kan. 511, 549, 85 Pac. 763.) The court finds that the accretions were from the dikes and mainland to the island. The finding that the ground between the riprap bank and the island remained low ground until the accretions connected with the Howe island is not a finding that the main channel of the river

2—98 Kan.

in front of Stark's land was not filled up "until the accretions became permanent land."

The side lines of Stark's land approached the original shore line at an angle bearing north of east, and the judgment extends his lines across the accretions in the same direction, parallel to Ohio avenue. Meriwether has acquired the title to a tract immediately adjoining that of Stark on the south and lower down, the original shore line of which curves slightly to the east, and he now contends that the judgment is erroneous in permitting Stark's lines to be extended in a direction parallel to Ohio avenue, and that his own lines should be extended so as to include the lands in dispute. He has no objection to the extension of Stark's lines at an obtuse angle in a north and easterly direction across lands decided in *Fowler v. Wood,* supra, to belong to Annie B. Wood *et al.* It is said in the brief of Stark that Meriwether raised the same contention as to the proper rule of apportionment of accretions in the case of *Fowler v. Wood,* in which he was a defendant, and that Meriwether is concluded or bound by the fact that the trial court adopted the same rule there that was applied here. The affirmance of the judgment which awarded to the plaintiffs in that case accretions extending outward on lines parallel to the original lines can not be regarded as *stare decisis,* because the correctness of that rule of apportionment was not presented to nor passed upon by the court. However, the affirmance of the rule there adopted is entitled to some weight. The proper method or rule for apportioning accretions on rivers or other bodies of water between adjoining proprietors depends upon varying circumstances and conditions, so that it is impracticable to state a general rule that will apply in all cases. There has been, therefore, more or less conflict in the decided cases. Numerous decisions will be found which pay no regard to the direction of the side lines between contiguous proprietors. The various rules are discussed with numerous citations in 1 R. C. L. 244-247. Sometimes the rule adopted is to extend the original frontage as nearly as practicable at right angles with the course of the stream or at right angles with the thread of the stream. The main object pursued in all cases is to secure to each riparian owner as nearly as possible his former means of access to the stream. In some cases equitable rules have

been adopted where the enforcement of some arbitrary rule would have the effect to deprive one proprietor of access to the stream. The circumstances of the particular case may, and often do, require the modification of any of the rules. (Note, 21 L. R. A. 776.)

The weight of authority seems to recognize that "the proper rule to follow, unless it results in such inequalities as to make it inequitable, is to give the riparian proprietors a frontage on the new shore proportional to their frontage on the old one, connecting the respective points by straight lines." (Note, 25 L. R. A., n. s., 257.)

· (See, *Nauman v. Burch*, 91 Ill. App. 48; *Berry v. Hoogendoorn*, 133 Iowa, 437, 108 N. W. 923; *Hathaway v. Milwaukee*, 132 Wis. 249, 111 N. W. 570, 112 N. W. 455, 9 L. R. A., n. s., 778, 122 Am. St. Rep. 975.)

We are unable to discover from an examination of the abstract that the trial court's attention was expressly challenged to this question or that the court was asked to adopt a different rule of apportionment. The court makes no finding showing the length of the new shore line or the exact direction of the thread of the stream at the present time. Nor does it appear from the record that the trial court was asked to make findings of this nature. Among the exhibits there is a map made for H. M. Meriwether by Tuttle and Pike in 1893, which shows the then bank of the Missouri river and the thread of the stream. Neither the present length of the bank nor the direction of the thread of the stream is shown. "Exhibit 37" is a map with lines showing the apportionment of the accretions, which we assume are drawn in accordance with the rule which defendant claims should have been followed. When this map was made, or the purpose for which it was introduced in evidence, is not apparent. The essential facts to enable this court to formulate a rule for the equitable division of the accretions are absent from the record.

Except for the purpose of enabling defendant to defeat plaintiff's claim to the particular land in dispute, we discover no reason for the adoption in the present case of what is called the equitable rule. The extension of Meriwether's lands in exactly the same way on lines parallel to his original lot lines will give him access to the Missouri river, if he goes far enough.

The fact that he will be required to cross the state line to reach the river does not alter the situation, nor call for the adoption of a different rule of apportionment from the one followed in *Fowler v. Wood*, 73 Kan. 511, 85 Pac. 763.

We think the findings are sustained by sufficient evidence, and therefore the judgment will be affirmed.