No. 19,888.

JOHN W. STARK, *Appellee*, v. HUNTER M. MERIWETHER, *Appellant*, et al.

OPINION ON REHEARING.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion on rehearing filed February 10, 1917. Reaffirmed. (For orginal opinion see 98 Kan. 10, 157 Pac. 438.)

*L. W. Keplinger, C. W. Trickett,* both of Kansas City, *R. E. Ball,* and *Hunter M. Meriwether,* both of Kansas City, Mo., for the appellant.

*Edward C. Little,* of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: A rehearing was granted upon the complaint of counsel for Meriwether that the former opinion (*Stark v. Meriwether*, 98 Kan. 10, 157 Pac. 438) overlooked his main contention. Counsel insists that he "relied chiefly, aggressively, and most confidently throughout the entire litigation upon one specific and most prominent fact which appeared in the findings of the trial court." The complaint then proceeds:

"And this was the omission. The findings refer to the Coulter map thereto attached. The fifth finding refers to island 'B' as shown on

said map. . The island as shown by the map was right there, directly in front of the Stark land, before any accretions began to form, and directly between Stark's frontage and the land in dispute, and 700 feet nearer to the Stark land than was the land in dispute. The question was, whether or not the land in dispute was an accretion to Stark's original frontage. The Coulter map also shows that island 'B' as originally formed, and before any accretion began, extended both farther upstream and farther downstream than did the Stark frontage. Also the court shows that island 'B' never washed away, but continued to grow eastwardly. Your opinion gives the findings except that they do not show the Coulter map. Consequently, the size and location of the island 'B' as herein stated, upon which my contention was based, are not shown in your opinion. Upon the hearing I earnestly contended that this island 'B,' permanently located as it was, and lying directly in front of the Stark land as it did, and extending as it did both higher up and lower down than Stark's frontage, and this too, before accretions began forming, was an insuperable obstacle in the way of accretions advancing from the Stark lands in the direction of the lands in dispute which lay 700 feet still farther east."

This action was commenced October 16, 1906. Meriwether's answer, filed in December, 1907, set up a general denial, a claim of possession of the lands in dispute, and the further claim that there was a suit then pending in the federal court which involved the title and ownership of all the lands described in plaintiff's petition. On March 11, 1913, and after an amended petition had been filed, an answer was filed for Meriwether by his present counsel, which, after admitting possession of the lands in controversy, denied the other averments of the petition, set up the fifteen-year statute of limitations, and further alleged that "the land in controversy is an accretion to an island which arose in the bed of the Missouri river, to which island the defendant had title and which never belonged to plaintiff." The island mentioned in the answer was obviously the one referred to in the evidence and findings as the Howe Island, or "Island A." However, we shall assume that the answer is broad enough to include not only that particular island, but any other to which the defendant could show that the lands accreted. A copy of so much of the Coulter map as is necessary to show the locality and surroundings is reproduced on page 652.

The sole controversy below was whether the land in dispute was accretions to Stark's frontage on the riprap bank, or, as Meriwether contended, accretions to an island. The plaintiff offered evidence of witnesses who were familiar with the river at the locality in question which tended to show that there was no island at all at the place marked "B" on the Coulter map. Witnesses for defendant dignified the place as an "island," and testified that the accretions formed toward the island and not toward the riprap bank. But some contradictory statements in

respect to both these matters were shown in the testimony given in the old case of *Fowler v. Wood,* 73 Kan. 511, 85 Pac. 763, by at least two of these witnesses. Meriwether admitted that in the case of *Fowler v. Wood* he had testified that in 1889 when he first became familiar with the locality there was no island visible between the state line and the mouth of the Kansas river; that later in the same year he returned to the place when the water was lower and that a sand bar was visible at the place marked "B" on the Coulter map, and that the bar "was attached to the bank all along that locality." Some of plaintiff's witnesses spoke of the place as nothing more than a sand bank visible at low water, and explained the Coulter map as showing nothing more than a sand bar. The place on the map was marked "B" during the trial, not to indicate that it was an island, but to distinguish and identify the locality. In the findings the court refers to it on the Coulter map as "Island B," which never entirely washed away. The mere reference to it in the findings as an island does not, in our opinion, carry with it all the consequences which counsel contends for. In addition to the testimony of plaintiff's witnesses familiar with the river from the time the accretions first began to form, there was other evidence which fully justified the court in overruling the contention upon which counsel places such emphasis. The whole "insular theory" as far as it has any application to the facts respecting the manner in which the identical land in dispute was formed has been time and again discredited by the courts in litigation in which Meriwether was a party and by which he acquired a large portion of the same tract of which that now in controversy forms a part. In a number of suits, some in the courts of this state and others in the federal courts, he filed verified pleadings denying that any of the land comprising the tract of which the Stark lands are a part was formed by accretions to either of the islands which it is now claimed are shown on the Coulter map; on the contrary, he asserted and successfully maintained that the lands were and are accretions to the riprap bank. In much of the litigation he was strenuously opposed by the learned counsel who now represents him in this case, and who has with entire consistency and great ability vigorously maintained the insular theory.

The trial court in the present case must have given considerable weight to the evidence introduced in the way of pleadings, records and judgments in the other litigation. We referred briefly to those cases in the first opinion. We shall now quote more at length from the decision and findings in the case of *State of Kansas v. Meriwether*, 182 Fed. 457, decided in 1910 by the circuit court of appeals. The controversy in that case arose in a suit against the county treasurer of Wyandotte county to establish the ownership of a fund of $22,000, deposited as condemnation money for the right of way of a railroad across lands including those now in dispute. Jane Stark, through whom plaintiff claims, and Meriwether were parties. Meriwether filed a verified cross-complaint in which he set forth his claims to the fund by reason of his ownership of most of the tract. He alleged that in 1888 the Missouri river began anew to change its course, and that the lands were formed by accretions to the old south bank of the river as it existed prior to the accretions. He alleged that Jane Stark was the owner of the accretions attached to her land lying "just west of and adjoining" his own land; but alleged that the accretions should be equitably divided between the owners of the old south bank of the river, and he claimed that upon his theory of an equitable division of the accretions Jane Stark would not be entitled to any share in the condemnation money. His theory was, as contended in the present case, that even though the lands in dispute were formed by accretions to the river bank, still, inasmuch as his lands extended around the southeast curve of the old river bank, his lines should be extended diagonally across Stark's accretions, and Stark's lines, instead of extending outwards toward the new bank of the river, should extend across the accretions awarded to the heirs of Annie B. Wood in the *Fowler v. Wood* case (73 Kan. 511, 85 Pac. 763).

The state of Kansas intervened in the suit and, represented by the learned counsel who now appears for Meriwether, set up its claim to the condemnation money; the nature of its claim will be referred to presently. The special master appointed to find the facts and the law reported in 1908, finding Meriwether entitled to all the $22,000 condemnation money except the sum of $809.50, which the master concluded be-

longed and should be paid to Jane Stark; but he reserved the
question of whether Meriwether's claim to that sum was in
fact superior to hers. We assume that the point reserved was
the one depending on the manner in which the accretions
should be divided between Meriwether and Mrs. Stark. The
report of the master was confirmed and judgment rendered in
Meriwether's favor against George W. Howe and the state of
Kansas. The case came before the circuit court of appeals on
an appeal by the state.

In the opinion of that court the statement of facts, after
reciting the substance of Meriwether's cross-bill, proceeds as
follows:

"The state of Kansas in its cross-bill, after making allegations similar
to those of Meriwether. concerning the title and washing away of the
land and the change of the river's channel, alleged that afterwards 'there
appeared above the surface of said stream and within the channel of
said stream, an island, which was on both sides of the state line at said
point, and on the Missouri side of the main channel of said stream of
which island the state of Kansas was the owner by reason of its being
formed upon and within the bed and channel of said stream, which
island gradually extended toward the Kansas or right bank of said
stream, *also that another or other islands appeared in the bed of said
stream on the Kansas side of the state line*, and on the Missouri side of
the main channel or deeper part of stream, which other island or
islands also belonged to the state of Kansas for the same reasons,
and that said islands by gradual accretion thereto became united
and extended until they reached the Kansas bank. . . . And de-
fendant says that the said land so condemned was not an accretion
to the main land or to any land owned by said Meriwether or to any
person through or under whom he claims, but that the same consisted of
islands which formed and appeared in the channel of the Missouri river
and accretions thereto, all of which belonged to this defendant, by
reason of which fact this defendant is entitled to have and receive the
said sum of $22,000.'

"To this intervening cross-bill Meriwether filed an answer, in which
he denied the insular theory of the state and reasserted his claim that
the land condemned was formed by accretions to his riparian posses-
sions." (Italics ours.)    (*State of Kansas v. Meriwether*, 182 Fed.
457, 459.)

The statement of facts then quoted the language of the spe-
cial master, as follows:

" 'A change in the bed of said river caused by a shallowing of the
channel opposite the riprapped bank began to occur, and *a sand bar
accretion to said bank* began to form after the spring rises in said river,

and also a sand bar began to form on the northern and eastern side of the channel as it then existed and from thence on said sand bar accretion and sand bar extended north and east and substantially parallel with the south bank and increased in height and width, and, with their extension and growth, the channel of the river grew shallower and receded in a northerly and easterly direction.'" (p. 459.)

The opinion continues the statement of facts:

"He found that in the year 1889 the National Waterworks Company, an owner of land fronting on the river above that in question, constructed a dyke located about 1,600 feet upstream from the land in question; also, that the city of Kansas City, at about that time extended a sewer out into the new current of the river; that the effect of these constructions was to retard the flow of water around the point of land at the influx of the Kansas river, make it flow further northward, accelerate the accretion along the southern bank of the river, and increase the height, width, and length of the sand bar in the receding channel of the river; that as a result the channel receded further north and east until in the year 1891 or 1892 it ran, and has ever since continued to run, several hundred feet north of the land in question." (p. 459.)

We now quote from the opinion itself:

"Because of this last-mentioned fact, among others, it is contended by learned counsel for the state that the land condemned was not an accretion to the shore, but was an isolated growth, an island rising from the bed of the river. We, however, are unable to agree to this. Not only did the special master and the trial court find against it, but, by reason of the claim that their findings are uncertain and inconculsive, we have examined the evidence including several authentic topographical surveys and plats made between the years 1886 and 1892 while the land was forming, and from them all we are satisfied that the accretion theory is sustained by the proof and that the insular theory is not sustained. The fact that the land along the new channel is a little higher in elevation than that which lies further inland, nearer to the riprapped bank, is a condition not inconsistent with the conclusion reached. The evidence tends to show that in the process of land formation by accretion it is not uncommon to find higher levels next to the channel and a recession to lower levels further inland." (p. 461.)

Upon the theory that all these new-made lands were accretions to the riprap bank, Meriwether defeated the claim of the state of Kansas and secured not only $21,000 condemnation money, but also title to a large tract of valuable land. His theory was supported by facts sworn to by him. He now asserts the facts to have been the exact contrary; and in order to defeat Stark sets up the claim that the lands in question were formed by accretions to islands. In litigation with the state

Stark v. Meriwether.

and other parties he established by his own testimony and that of others that the so-called islands were mere "sand bar accretions" to the river bank. Having greatly profited by the process of blowing hot, he now, in order to profit again, blows cold, calmly relying upon the reference in the trial court's findings to the locality in question as an "island" that never washed away. He seeks now to magnify the importance of the sand-bar accretion by insisting that when it was first visible there ran between it and the riprap bank next to Fowler's packing plant the main "channel of the largest river in the world."

In the former opinion we said that if he was not estopped to assert his present claim perhaps he ought to be. The doctrine of equitable estoppel, strictly speaking, never applies unless the one urging it shows that his position or rights have been prejudiced in some material way by the former attitude or conduct of the one sought to be estopped.

There was in evidence a letter written by Meriwether to Mrs. Stark in 1903, admitting she was entitled to the accretions in front of her land, but setting up a claim that the accretions should be equitably divided. He alleged the same thing in the condemnation suit wherein Mrs. Stark was a party. We do not deem it necessary, however, to determine whether his conduct in these respects so far prejudiced the grantors of plaintiff Stark that the principle of equitable estoppel applies in strictness. "Whether the principle is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important." (*Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099.) The foregoing excerpt is quoted with approval in *Bank v. Jesch*, post, and also the following from 10 R. C. L. 694:

"The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced."

It is sufficient to say that, in view of all the facts stated, the claim that it became a physical impossibility for the lands in dispute to have been formed by accretion to the river bank does

not impress this court; and it sees no reason to disturb the findings of the trial court to the effect that these lands belong to Stark, notwithstanding the reference in the findings to the so-called "Island B."

The former judgment will be adhered to.