No. 21,445.

RACHEL LILLARD and MOLLIE E. BLAKEMORE, as Executors, etc., of R. I. McQUIDDY, deceased, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON, *Appellees*.

SYLLABUS BY THE COURT.

1. ESTOPPEL—*Consistency of Conduct Required*. The doctrine of estoppel requires of a party consistency of conduct when inconsistency would work substantial injury to the other party.

2. CONDEMNATION PROCEEDINGS—*County Warrant Issued—Ownership of Warrant—Arbitration—Estoppel*. A landowner entitled to a warrant for certain condemnation money, instead of demanding its delivery, submitted to the county board the question whether he or his grantee was entitled to such warrant, stating, among other things, that he felt "sure that when the facts are known by you, that no better tribunal can be found to decide our relative rights than your Honorable Body."

Thereafter the vendee appeared before the board, and upon his showing the warrant was delivered to him. Later the vendor sued the board to recover the amount and value of the warrant. *Held*, that he is estopped.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed April 6, 1918. Affirmed.

*I. O. Pickering,* of Olathe, for the appellants.

*C. L. Randall,* county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: A road was ordered opened across the land of R. I. McQuiddy, who presented his claim for damages and was allowed $600. On October 30, 1915, the board of county commissioners ordered a warrant to be drawn and issued to him for this amount. The petition set out the warrant, and alleged that when it was drawn there was sufficient money in the treasury to pay, but that before the action was begun he demanded payment, which was refused. The board answered by general denial, admitted the execution of the warrant, and alleged that it was held by the clerk to be delivered to the party legally entitled thereto. Further, that about December 16, 1915, McQuiddy sold the property and executed a general warranty deed therefor, of which fact the board had no knowledge until sometime after the execution of the warrant and until the grantee appeared and demanded that it be delivered to him. The board further alleged its clerk communicated with McQuiddy, advising him of the claim of his grantee, whereupon McQuiddy authorized the board to ascertain and decide who was entitled to the warrant and dispose of it accordingly, setting out a copy of his letter in which he said:

"After due deliberation, I have concluded to submit the question of ownership to the $600.00, awarded me for damages. . . . after a fair and true statement of all the essential facts I desire the said honorable board to decide who should have the money and so dispose of it."

Then followed a statement as to the price and profit on the sale, and the expression,

"I feel sure that when the facts are known by you, that no better tribunal can be found to decide our relative rights than your Honorable Body."

It was alleged that after receiving this letter the grantee with his attorney appeared before the board, and that the latter in good faith, after hearing the matter, delivered the warrant to such grantee, and did so upon the direction contained in the letter referred to. To this answer a demurrer was filed and overruled. Thereupon a motion was made for judgment on the pleadings, which was also overruled. McQuiddy having died, the case was revived in the names of the plaintiffs as executors, who appeal.

The plaintiffs contend that the county board was the proper tribunal to establish the road and determine to whom the damages were due; that this determination was in favor of the decedent; and that,

"The board had no power to review and revise that decision and award or to sit in judgment in a controversy between rival claimants of a fund in its possession."

The board, Duvall not having been made a party as requested, contends that it is protected in its action by the direction in the McQuiddy letter; that having thus directed he could not repudiate his action, and that he is estopped so to do. It is said that,

"What he did, was voluntary on his part—not even suggested by the Commissioners; having on his own motion voluntarily waived his right to demand payment, surely must be bound by his selection of methods."

We have examined the record and the briefs, as well as the reply brief, and to this complexion must it come at last: When the warrant was drawn McQuiddy was entitled to it; before this suit was brought he had sold the land to Duvall, who appeared before the board and claimed that the warrant should be delivered to him. On receiving this information from the board, McQuiddy recognized that there was a question between him and Duvall as to the ownership of the warrant and substantially requested the board to ascertain the facts and decide accordingly, making it a sort of referee or arbiter to investigate and determine the rights of the grantor and grantee. It appears that the board did exactly what he suggested, and decided in favor of the other party. There is no showing or claim that the board did not ascertain the real facts, or that it did not act in good faith, or do exactly what the grantor

Lillard v. Johnson County.

had suggested that it should do.   While McQuiddy was under no compulsion to submit this matter to the arbitration of the county board, and while that body had no jurisdiction to decide it, and none could be conferred by the act of the parties, still he voluntarily did so submit it, and the other claimant acting thereon made a showing and won.   It does not lie in the grantor's mouth, under these circumstances, to ignore the action of the board, which he thus invoked, and compel it to pay the warrant to him.   In other words, under the circumstances shown, the decedent estopped himself by his own conduct to acquire the relief which the executors demand in this case. One who submits a matter to one known to be incompetent to act as arbitrator, and takes the chances of a favorable decision, cannot, after the award, raise the question of incompetency (*Anderson v. Burchett,* 48 Kan. 153, 29 Pac. 315) ; likewise one who has waived the oath of the arbitrators and the swearing of witnesses who appear before them cannot, after the award, raise the question.   (*Russell v. Seery,* 52 Kan. 736, 35 Pac. 812.)

The doctrine of estoppel requires consistency of conduct. (*Powers v. Scharling,* 76 Kan. 855, 859, 92 Pac. 1099; *Stark v. Meriwether,* 99 Kan. 650, 657, 163 Pac. 152.)

"Estoppel arises when one by his conduct so misleads another, that the former is not permitted, or, as we say, is estopped from asserting a right which he might otherwise assert.   In theory, the person estopped still has the right but cannot assert it."   (14 M. A. L. 174.)

"The doctrine of estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit."   (10 R. C. L. 694, § 22.)

"An estoppel may be used as a defense against a party who is thus precluded from [by] his act or statement from maintaining his action; or it may be used by the plaintiff to prevent or avoid a defense which is open to a similar objection."   (1 Herman on Estoppel and Res Judicata, § 19.)

The order overruling the motion for judgment on the pleadings is affirmed, and the cause is remanded for further proceedings.