No. 25,537.

G. R. GAGE, *Appellee,* v. J. H. LESLIE et al., *Appellants.*

SYLLABUS BY THE COURT.

CONTRACT—*Sale of Land—Specific Performance—Findings.* A decree for the enforcement of the specific performance of a contract for the sale of land is held not to be inconsistent with the facts found by the court, or in excess of its powers.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed January 10, 1925. Affirmed.

*Walter F. Jones,* and *F. L. Martin,* both of Hutchinson, for the appellants.
*Eustace Smith, C. M. Williams,* and *D. C. Martindell,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: G. R. Gage sued J. H. Leslie and his wife, asking the specific performance of a written contract for the exchange of real estate. He recovered judgment and the defendants appeal.

The property which by the terms of the contract the defendants were to convey was their homestead. They contend that although Mrs. Leslie signed the contract, after doing so she placed it in the hands of a real-estate broker, who was acting for all the parties, with instructions not to deliver it unless a specified clause was stricken out; that in violation of his instructions he delivered it without any change having been made, and therefore no valid delivery took place and in legal contemplation she did not execute it. The plaintiff's version of this episode was that the objection made by Mrs. Leslie to the clause in question was due to her giving it a meaning which its language did not justify and which the other parties agreed was not intended. He also asserted that Mrs. Leslie after learning of the delivery without change of the contract bearing her signature acquiesced in further proceedings in carrying out the exchange of properties.

The clause referred to reads: "It is further agreed that the shades for windows and fixtures shall go with each of the respective properties." There is some conflict in the evidence as to just what took place with reference to the proposition to strike it out. The real-estate agent testified: "Mrs. Leslie did not say the contract was not to be delivered until the clause was stricken out; nothing of that kind." There was testimony that Mrs. Leslie objected to the clause through fear it would be interpreted as covering the curtains as well as the shades and shade fixtures, and that she was assured it did not mean that. The findings of the court on the subject, which being supported by the evidence, are controlling, read:

"The court further finds that after said contract had been signed by J. H. Leslie, G. R. Gage and Grace M. Gage, the same was presented to Mrs. Leslie for signature by A. N. Glancy, who was acting as agent for all the parties, and her husband, J. H. Leslie; that she demurred and objected to signing the same unless the clause, 'It is further agreed that the shades for windows and fixtures shall go with each of the respective properties,' was removed, and the question of what the clause covered was debated, and she was told by her husband that the window shades and the shade fixtures were to go with the house and for her to sign the contract, and thereupon without further objection she signed the same, and it was delivered to Glancy for delivery with the understanding that he would get the clause removed so that the contract

Gage v. Leslie.

did not include any curtains or fixtures not intended to go with the place. That said Glancy saw Doctor Gage and the attorneys who prepared the contract and explained the objection that Mrs. Leslie made to the contract and asked to have it stricken out or changed, but they refused and explained that the contract only intended to and did cover the window shades and fixtures as the agreement was, and thereupon by instructions from Mr. Leslie the contract was delivered to Doctor Gage.

"The court further finds that within an hour after the signing of said contract by Mrs. Leslie and its delivery, she was informed of its delivery and the refusal to remove the clause or change it in any manner, and that she made no objections thereto, and with knowledge of such delivery of said contract with said clause remaining in it she, with her husband, went out to the farm and looked it over, at which time her husband informed the tenants of his purchase and that he was their landlord, made arrangements for the division of the alfalfa crop, and entered into negotiations with the tenant, Mr. Alber, for his remaining upon the property and leasing it for the coming year.

"The court finds that the clause in said contract objected to by Mrs. Leslie simply covered the window shades and the fixtures pertaining to said window shades in her house and did not cover any other fixtures or curtains, the fear of which caused Mrs. Leslie's objection, and that as thus limited she made no objection to said clause after her husband's statement that the shades and the fixtures of each of the houses were to go in the trade, and that the delivery of the contract with said clause becomes immaterial as a defense to the plaintiff's action for specific performance."

The findings do not show that Mrs. Leslie forbade the delivery of the contract with her signature attached unless the clause in question was removed. They do show that what she desired was that she was to be protected against entering into an engagement to turn over curtains or other fixtures than those of the window shades, and this protection was given. While her course after learning of the delivery of the contract without change may not have created what in strictness is called an estoppel, it was such as to preclude her from denying her execution of the contract. Of a situation similar in principle it has been said:

"The plaintiff contends that by his conduct at this time the defendant was precluded from afterwards denying its claim. The defendant maintains that no estoppel could have resulted, because the plaintiff's position was in no way changed for the worse by reason of anything that had been said. In order for the conversation narrated to operate as a bar to a subsequent denial of the plaintiff's interest it is not necessary that there should have been a concurrence of all the elements of an estoppel, as the term is usually defined. 'Whether the principle is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important.' (*Powers v. Scharling,* 76 Kan. 855, 859, 92 Pac. 1099.) 'The doctrine of equitable estoppel is frequently applied to transactions in which it is found

that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced.' (10 R. C. L. 694.)" (*Blank v. Jesch,* 99 Kan. 797, 799, 163 Pac. 150. See, also, *Hardware Co. v. Leasing Co.,* 104 Kan. 729, 730, 180 Pac. 734; *Stark v. Meriwether,* 99 Kan. 650, 657, 163 Pac. 152; *Lillard v. Johnson County,* 102 Kan. 822, 825, 172 Pac. 518.

The defendants resisted the enforcement of the contract on the additional ground that the plaintiff had falsely represented that the dwelling house on the land he was trading, and the water system therein, were in first-class condition. The court found that in the course of the negotiations the plaintiff had said the water system was in working order and the house in good condition, while in fact the water system was not in working order and the east basement foundation was cracked and had sagged in several inches, necessitating reinforcement. There were also findings, however, that Leslie, immediately after the execution of the contract, visited and examined the house with Mrs. Leslie, and with full knowledge of the defects referred to told the occupant he was his new landlord and "arranged with him for his share of the crop as provided by the contract" and made a proposition, which was taken under consideration by the tenant, for a new lease. Further findings affecting the matter were:

"The court finds that the quarter section of land in question and its being clear of incumbrance was the controlling cause and the material consideration for the trade, and that the house and other improvements as such were a mere incident and only material as they might enhance the value of the land.

"The court finds that the statement of Doctor Gage that the house on the farm was in good condition took place in a conversation under such conditions as imported merely an opinion and was not the affirmation of any particular quality. There is no evidence that any particular quality was meant by the term, and Mrs. Alber, wife of the tenant occupying the premises, testified that the house was in good or fairly good condition, so that the court must necessarily find there was no false or fraudulent statements or misrepresentations as to the condition of the house and no fraud or deception was intended to be practiced by Doctor Gage in making said statement.

"The court further finds that the action of the defendant J. H. Leslie, in notifying the tenant of the purchase and seeking to lease the property for the coming year, etc., after full knowledge of all the defects complained of, is conclusive to my mind that the attempted repudiation of the contract was an after consideration, and that the reasons set out in the answer of the defendants are not the operating and controlling causes of the attempted repudiation, but are an after consideration and are resurrected for the purpose of attempting to sustain their refusal to carry out their contract."

The judgment is attacked by the defendants as in excess of the powers of the court, and as inequitable. It required that the plain-

tiff should have the water system put in good working order and deposit with the clerk an affidavit of this having been done. That requirement is challenged as not sufficiently guaranteeing to the defendants the performance of the condition, and as not providing for sufficient proof of its having been met. The decree seems to us a fair exercise of the power of a court of equity to see that substantial justice is done. Nor do we consider that the court's power in that respect is exhausted by the order for the filing of an affidavit of compliance. No reason is apparent why there should be any practical difficulty in the adoption of other appropriate means of requiring obedience to the order.

The judgment is affirmed.