No. 35,346

Ruby Clark Wolf et al., *Appellants,* v. Stella Rich et al., *Appellees* and *Cross-appellants.*

(121 P. 2d 270)

Opinion filed January 24, 1942.

*Hal M. Black, L. M. Kagey* and *Robert H. Nelson,* all of Wichita, for the appellants; *Austin M. Cowan, C. A. McCorkle* and *W. A. Kahrs,* all of Wichita, of counsel.

*William J. Wertz, Vincent F. Hiebsch, Milton Zacharias, Earl Blake* and *Harold Blake,* all of Wichita, for appellees and cross-appellants.

The opinion of the court was delivered by

WEDELL, J.: This was an action for the specific performance of an alleged oral contract for equal division between plaintiffs (nieces and nephews of Mrs. John F. McManaman) and defendants (nieces and nephews of John F. McManaman) of all property, real and personal, remaining after the death of McManaman and his wife. Defendants prevailed and plaintiffs appeal. Defendants have cross-appealed. We shall first direct our attention to the direct appeal.

A statement of a few undisputed preliminary facts disclosed by the pleadings will be helpful. The McManamans were married in 1889 and lived together until the death of Elta McManaman, who died intestate on June 28, 1939. Her husband died testate October 22, 1939. They had no children of their own and had adopted none. A will of John McManaman, executed July 13, 1939, was admitted to probate November 20, 1939. The will did not dispose of the property in accordance with the alleged oral agreement. By it $100 was bequeathed to each of the wife's eight nieces and nephews. The real estate and the remainder of the personalty was divided among his own nieces and nephews. In the will Cash K. Rife, husband of one of the testator's nieces, was appointed executor. At the time of the probate of the will plaintiffs appeared and petitioned the probate court for the appointment of a disinterested administrator. That petition was allowed and O. A. Bell was appointed as special administrator. The journal entry of probate recites appellants stated they were not contesting the will, but were only requesting the appointment of a disinterested third party to administer the estate. On May 8, 1940, appellants filed a petition in the probate court. They set up an oral contract alleged to have been made by the McManamans and contended appellants' rights in the estate were fixed and determined by that contract and could not be altered by the will. A trial was had and a demurrer, interposed by appellees to appellants' evidence, was sustained. From that ruling appellants appealed to the district court. Their instant appeal is from an adverse judgment of the district court.

Trial by jury was waived in the district court. In that court appellees interposed a demurrer to appellants' evidence upon nine grounds. The trial court reserved its ruling thereon. Defendants

introduced their evidence and plaintiffs introduced rebuttal testimony. After all parties had rested the court heard and considered the arguments of counsel for the respective parties upon the entire record, including the various grounds of appellees' demurrer to appellants' evidence. From the journal entry of judgment it clearly appears the court did not only rule upon appellees' demurrer but, in a separate and distinct paragraph, also made a specific finding of fact. That portion of the journal entry of judgment reads:

"And the court, after hearing the evidence and argument of counsel, *finds:*" (Here the court in four separate paragraphs overruled four separate and distinct grounds of defendants' demurrer and then in a separate paragraph is found the following specific finding.) "The court *finds* that the evidence on behalf of the appellants *is not sufficient to establish the contract as pleaded* in their amended petition." (Emphasis supplied.)

By reason of the above finding the court stated it would be unnecessary to rule on other questions of law. In addition to the above finding of fact the court sustained appellees' demurrer to appellants' evidence upon the ground the evidence was not sufficient to establish the contract pleaded.

Appellants contend the only question now involved is whether the district court erred in sustaining the demurrer to their evidence. In view of the specific finding of fact made by the trial court we cannot agree the ruling on the demurrer is the only question involved on the appeal perfected by the appellants. Appellants filed a motion for a new trial upon all the statutory grounds, which was overruled. Appellants have also appealed from that ruling.

We shall first consider the order sustaining the demurrer to appellants' evidence. In this respect it is well to remember appellants do not contend appellees' evidence in any manner helped to establish appellants' cause of action. We therefore need look only to appellants' evidence in order to determine whether their evidence was sufficient to entitle them to the relief sought. The oral contract pleaded was:

5. "On or about the first day of May, 1939, and at other and divers times, and on numerous occasions a long time prior to the death of Elta McManaman, the said John Francis McManaman and Elta McManaman orally agreed that if one of them died, the survivor would make a will disposing of all of said estate, both real and personal, by giving and dividing one-half of the real and personal property to the nieces and nephews of said John F. McManaman and one-half to the nieces and nephews of Elta McManaman."

It is clear the alleged contract pertained to both real and personal

property, was indivisible, and within the statute of frauds. (*Paton v. Paton*, 152 Kan. 351, 103 P. 2d 826, and cases therein cited.) In the Paton case it was held:

"The general rule is that if a parol contract is entire and indivisible and a part of it is within the statute of frauds, the whole contract is unenforceable, although part of it is not covered by the statute.

"If an agreement to devise real property and to bequeath personal property is within the statute so far as the real property is concerned, the entire contract, if indivisible, is within the statute." (Syl. ¶¶ 1, 2.)

Assuming the contract pleaded was actually made, we think it was supported by a valid consideration. We think a fair interpretation of the contract pleaded is that the parties thereby intended to agree they would not dispose of their respective properties during their respective lives and that the survivor, by will, would dispose of the estate remaining at his death in the manner indicated by the contract. The real estate all stood in the name of the husband. No competent evidence was offered by appellants which disclosed the wife had any interest therein, except a right of inheritance in the event her husband died first. It is conceded she possessed a substantial amount of personalty. The mutual promises of the husband and wife touching the distribution of their estates constituted an adequate consideration for the contract. (*Johnson v. Soden*, 152 Kan. 284. 103 P. 2d 812, and cases therein cited.)

But what about performance under the terms and provisions of the pleaded contract? Appellants insist the wife performed and the husband breached the contract by the will he executed July 13, 1939, after the death of the wife. It is true the will contravened the pleaded contract. Are appellants correct, however, in stating their evidence disclosed the wife performed in accordance with the terms of that contract?

Much space is devoted by appellants to demonstrate their evidence disclosed the oral contract had been made by McManaman and his wife. It will be observed the contract pleaded embraced no exceptions. Under it all of the estate of both parties thereto was to be disposed of as a unit by the will of the survivor. One-half of the joint estate, remaining at the death of the survivor, was to pass to appellants and the other half to appellees. Most of appellants' witnesses testified to an entirely different contract, namely, a contract under which appellants would have received some portions of the wife's property before the division under the pleaded contract was to be made. But let us assume that, as against a demurrer,

there was some testimony which established or tended to establish the pleaded contract. Was that testimony, in and of itself, sufficient to entitle appellants to the relief sought? What about consideration for the contract on the wife's side and did she perform pursuant to the contract·pleaded?

Appellees contend there was no consideration for the contract on the part of the wife but that, if such consideration existed, the contract pleaded was not performed by the wife and on the contrary was violated by her and that appellants accepted the benefits of such violation and are not now entitled to the relief sought.

Mrs. McManaman died June 28, 1939. Appellants' uncontradicted evidence disclosed Mrs. McManaman left two separate letters dated August, 1937, and February 15, 1938. The first letter was specifically addressed to her husband. The letters were as follows:

"AUGUST 1937.

"DEAR JOHNNY: When I am gone I wish my personal things and other furnishings about the house to be given to my sister Minnie Rounds, my nieces, Esther Anthony Phillips, Isis Anthony Dillon, Wanna Anthony Perkins, and Pauline Rounds—Esther and Wanna to be administrator and with you do the dividing.

"To Minnie Rounds—My white Havaland China and my bar-pin (broach) with the diamonds. Might be something else. My Dodge City B. L. stock all to Minnie.

"To Pauline Rounds—Some silver, the salad forks and T spoons to match, a piece of pottery.

"To Wanna A. Perkins—My gold diamond ring, Italion embrordied table cloth & napkins, quilt. The teching picture—Venecian candle holders—oriental rug.

"To Esther A. Phillips—My platnum diamond ring, point Veniece·luenchon set, blue quilt, picture over the mantel, piece. of Van Briggle pottery, silver gravey boat, Venecian glass vase, Hall mirror, my sewing cabinet.

"To Isis A. Dillon—The embrordied mull bed spread, quilt, some linens (table cloth & napkins) piece of Van Briggle pottery, 6 T spoons, Round mirrow, silver pitcher.

"Many other things for you to· divide & give as seems best. Some of the furnature to be given and sold. These suggestions are for only a part.· I leave the divideing to Esther and Wanny and Johnny.

With love,    ELTA McMANAMAN."

"WICHITA, KANSAS, Feb. 15, 1938.

"After my death, I wish my sister Minnie Rounds to have my Ford County Building Loan shares—If her death is before mine,—I want the Ford County Building Loan shares to be divided equal with my nieces, Pauline Rounds, Isis Dillon, Esther Phillips, Wanna Perkins.

"My Southwest Building Loan shares to be divided with—Elmer C. Clark,

Lawrence L. Clark, Isis Dillon, Esther Phillips, and Wanna Perkins, my nephew and nieces, share equal.

"If I have money on deposit in Bank (The First National) I want that to go to my four nieces, Esther Phillips, Pauline Rounds, Isis Dillon and Wanna Perkins, share equal after expense of this settlement is made.

"Esther Phillips and John McManaman to administer this.

Elta McManaman."

While these instruments were not witnessed as wills, it clearly appears they were intended to be and were testamentary in character. The persons named therein are all her nieces and nephews. Mrs. Minnie Rounds was one of appellants' witnesses. She was a sister of Mrs. McManaman, and the mother of one of the appellant nieces. Upon cross-examination she testified in substance, without objection, as follows: She was in Mr. McManaman's home during the week following the death of his wife. He was not well and was in bed. He handed her the first dated letter, and stated "I want you to see this"; he handed her the second dated letter and said: "He wanted me to see it and wanted to do just exactly as she (his wife) wanted done." (Appellees tell us these letters were found among the wife's personal effects in her bedroom after her death but that fact does not appear to be disclosed by appellants' evidence.)

While appellants' evidence did not fully disclose the complete distribution which was made of the wife's property during the week following her death, it did show that her wishes and desires as stated in her letters of testamentary character were recognized by both her husband and appellants, and that appellants promptly accepted substantial benefits thereunder. Appellants' evidence discloses at least in part what distribution was made at that particular time. That testimony was:

"The building and loan stock of Wichita was $500. Mr. McManaman got the building and loan stock and gave the company an affidavit. Esther Phillips went down and got the lady from the bank and brought her out and settled it right there. He gave the boys and girls their $100 apiece, and he was carrying out Mrs. McManaman's request. Exhibits 3 to 9, except 7 and 8, are the checks that were issued for $100 apiece to each of the nieces and nephews. (T. 82.) The signature is John McManaman's signature."

"Minnie Rounds was given Mrs. McManaman's bar pin and Pauline Rounds some silverware and salad forks. Wanna Perkins a gold diamond pin, quilt, picture, tablecloth and napkins. Esther Phillips a ring and luncheon set."

(As a part of appellees' evidence the parties stipulated that Mrs. McManaman had $1,046.25 on deposit in a bank at the time of her death.)

Appellants' own evidence, however, clearly discloses the property embraced in the letters left by the wife was of substantial value. Appellants' testimony disclosed they had knowledge of the oral contract now pleaded before the death of Mrs. McManaman. They, therefore, had such knowledge before they accepted benefits under the instruments executed by her, which instruments are wholly inconsistent with the oral contract now relied upon. According to the instruments left by the wife she did not intend merely to dispose of some small things of sentimental value as suggested in the testimony of some of appellants' witnesses. According to those instruments she intended to dispose of her own property and household furnishings immediately upon her death and thus deprive the husband of their use during his lifetime, contrary to the contract now pleaded. By those instruments she sought to dispose of her own property to her own nieces and nephews immediately upon her death, contrary to the contract now pleaded. Acceptance of benefits by appellants under those instruments was not only inconsistent with the contract now pleaded, but resulted in disadvantage and injury to appellees in that they received none of the wife's property at the time of her death or thereafter. Furthermore appellants' evidence does not disclose they have ever offered to return what they received or that they are now able to return it or its value.

Appellants point out there was evidence that after the date of the last letter of the wife, February 15, 1938, the husband and wife stated they had the agreement upon which appellants now rely. The only purpose such testimony might serve would be to prove, or tend to prove, the wife did not intend the property should be distributed in accordance with the directions contained in her letters. The substance of that contention is that the wife did not intend to breach the contract now pleaded. If that contention be sound then appellants should not have accepted benefits under the instruments which completely excluded appellees and which are wholly inconsistent with the contract upon which they now rely and seek relief. They did accept such benefits. Having knowingly so acted to the injury of appellees they cannot now obtain relief upon a wholly inconsistent theory. (*Powers v. Scharling*, 76 Kan. 855, 859, 92 Pac. 1099; *Stark v. Meriwether*, 99 Kan. 650, 657, 163 Pac. 152; *Lillard v. Johnson County*, 102 Kan. 822, 825, 172 Pac. 518; *Sylvester v. Lynde*, 113 Kan. 450, 454, 215 Pac. 305; *Gas Service Co. v. Consolidated Gas*

*Utilities Corp.*, 145 Kan. 423, 435, 65 P. 2d 584; *Swisher v. McMain*, 153 Kan. 401, 411, 110 P. 2d 765.)

It is true the trial court sustained the demurrer on the ground the evidence was not sufficient to establish the contract pleaded. What the trial court should have said is that the evidence did not warrant the relief sought upon the contract pleaded. The legal point involved, however, was raised under several separate paragraphs of the demurrer. The correct conclusion was reached on the demurrer and under the circumstances stated we will not disturb the result. Under these circumstances it is not necessary to consider the various contentions on the cross-appeal of appellees that the demurrer should have been sustained upon additional grounds. Nor need we give further attention to the finding of fact made by the trial court at the conclusion of the trial.

By reason of the statement of appellants that the only question presented on appeal is the ruling on the demurrer we need not consider the ruling on the motion for a new trial. The ruling on the demurrer is sustained and the district court is directed to enter judgment for appellees.