**Janet METZ, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–3050.

United States Court of Appeals, Tenth Circuit.

May 6, 1991.

Rehearing Denied July 5, 1991.

Gerald Sawatzky of Foulston & Siefkin, Wichita, Kan., for plaintiff-appellant.

Joan I. Oppenheimer, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and William S. Estabrook, Attys., Tax Div., Dept. of Justice, Washington, D.C., with her on the brief, Lee Thompson, U.S. Atty., Wichita, Kan., of counsel), for defendant-appellee.

Before LOGAN, SETH and TACHA, Circuit Judges.

SETH, Circuit Judge.

This dispute centers on the title to a residence at 16 Linden Drive in Wichita, Kansas. The primary issue presented on appeal is whether the property interest in the house was transferred from D. Otis Metz to Janet Metz before or after D. Otis Metz died. The timing is critical because it determines whether the house was properly included in D. Otis Metz's estate.

Janet Metz filed this lawsuit on April 20, 1988 to quiet title in the Linden Drive residence. The Internal Revenue Service (IRS) argued that it has a federal tax lien on the property as part of the estate of D. Otis Metz, the former owner. The district court agreed with the IRS and granted the government's motion for summary judgment. The court found as a matter of law that the Linden Drive house was owned by D. Otis Metz at the time of his death and was properly included in his estate. When the estate defaulted on its tax payments, the IRS could foreclose on the house. The court affirmed its ruling in a subsequent motion made by Janet Metz to alter or amend the judgment against her.

On appeal, Janet Metz argues that the district court erred in ruling that a lifetime service contract made in exchange for property does not transfer title to the property by equitable conversion at the time the parties enter into the contract. Metz's theory is that she obtained title by equitable conversion in October 1976 when she agreed to the terms of the contract. The government contends that the contract was not enforceable until D. Otis Metz died in March 1980. And, because Mr. Metz held legal title at his death the house was properly included in the Metz estate. While we certainly sympathize with the predicament Janet Metz is in, for the reasons that follow we must affirm the decision of the trial court.

In October 1976, Janet Metz was living with her two daughters in California when she received an offer from D. Otis Metz, the grandfather of her ex-husband. Mr. Metz offered to add a codicil to his will leaving his house in Wichita, Kansas to Janet in exchange for Janet's promise to move into the house and care for him until his death. Mr. Metz was 91 years old when the offer was made.

Janet Metz accepted the offer and signed a letter agreement on October 18, 1976. She sold her house in California and moved into the house in Wichita. On November 29, 1976, pursuant to the terms of the agreement, Mr. Metz executed a codicil to his will leaving the house to Janet. His stated reasons for doing so were his "great love and affection for Janet Metz" and the fact that Janet, by moving in with him, had complied with the terms of the contract. The codicil further declared:

"It is my desire that my executor transfer the property to Janet Metz as quickly as possible after my death and that any taxes of any kind, inheritance taxes or otherwise, occasioned by these specific

bequests shall be paid by my estate and shall not be charged to the specific devisees named above."

Janet Metz and her daughters lived with Mr. Metz until he died on March 11, 1980.

Mr. Metz's will was admitted to probate and the court valued the total assets of the estate at $2,986,275.01, which consisted of $2,384,320.50 worth of stock and notes receivable held in the J. W. Metz Lumber Company. The Linden house, valued at $250,000.00, was included in the estate without objection by appellant.

On February 16, 1981 the Internal Revenue Service assessed the estate $1,042,-160.94 in estate taxes. The estate immediately paid $342,975.00. The IRS, acting pursuant to 26 U.S.C. § 6166, granted the estate's petition to defer payment of the remaining $699,185.77. The deferred amount was to be paid in ten installments beginning December 11, 1985. Between 1981 and 1985, the estate paid $276,670.97 in interest on the deferred taxes.

During the interim before the first installment came due, the J. W. Metz Lumber Company experienced financial difficulties. On October 31, 1984, an agreement was entered into between the estate and the lumber company to reorganize the company's capital structure. Under the agreement, the estate could redeem preferred shares in the company to obtain the funds necessary to make the tax payments.

The attempted reorganization failed and the lumber company declared Chapter 7 bankruptcy. The shares of stock held by the estate lost their value making payment of the December 11, 1985 tax installment impossible.

The probate court authorized distribution of the Linden Drive house to Janet Metz. Before the IRS accelerated collection of the outstanding taxes, the executor of the estate petitioned and received a Decree of Final Settlement from the probate court. The Decree found that the estate had no property with which to make further payments on the deferred portion of the federal estate tax.

On January 12, 1987, the IRS accelerated the deferred estate tax payments and demanded payment of the entire amount owed plus penalties and interest. The IRS claims it has valid liens totaling $990,432.99 as of June 1, 1988. The government seeks to collect part of the outstanding taxes owed by foreclosing on the Linden Drive house.

■ In reviewing the district court's grant of summary judgment, we review the evidence and any possible inferences from the evidence in the light most favorable to the party opposing the motion. *Laidley v. McClain,* 914 F.2d 1386, 1390 (10th Cir., 1990). Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."

■ Before addressing the merits of appellant's contract argument, it is necessary to consider the effect of appellant's "silent" acceptance of the estate's inclusion of the house in the value of the gross estate. In the federal estate tax return filed on December 11, 1980, the executor of Mr. Metz's estate reported the house, valued at $250,000.00, as part of the total estate. Consequently, a portion of the $1,042,-160.00 estate tax charged to the estate represented tax owed on the Linden Drive house. Janet Metz did not object to this transaction. It also appears she chose not to list the value of the house on her individual 1980 income taxes.

The question is whether appellant's "acquiescence" bars her current contract claim. In *Hughes v. Hughes,* the Kansas Supreme Court stated that "[w]e have repeatedly held a devisee must either accept or reject a will as written and that he cannot accept its benefits and reject its burdens." 152 Kan. 720, 107 P.2d 672, 675 (1940). The *Hughes* court held that a party who accepted a residuary distribution under a will could not later bring a contract action challenging a provision of the will devising land to another person. The court distinguished its facts from the situation where a party challenges provisions of a will which do not conflict with the benefits

they receive under the will. "The fact that a legatee or devisee has accepted the provisions of a will does not estop him from advancing any contention *not inconsistent with the will or his position thereunder.*" *Id.* (quoting 69 C.J. 973, § 2165) (emphasis in original).

By accepting the house under the will, appellant avoided paying personal income tax on the property. From a monetary standpoint she received a benefit from the will—a benefit which Mr. Metz specifically desired her to have. Appellant's case, however, is unlike *Hughes* because appellant is not contesting a provision of the will. She is merely arguing an alternate theory of recovery, which if successful, would *not* alter the rights of any of the other parties to the will.

■ When appellant accepted the house under the will, there was nothing to indicate that her right to the house under the will was different than her right to the house under the contract. One possible inference is that she made the decision for tax reasons. It is also possible to infer that her decision was made for convenience. Bringing a contract claim for the house most likely would have involved litigation. One can assume, however, that had she known of the future tax problems the estate faced, she would have elected to bring a contract claim to recover the house. Absent such a knowing election between two distinct options, a party should not be barred from asserting a separate theory of recovery which does not contradict the rights of others in a will. *Cf. Wolf v. Rich,* 154 Kan. 636, 121 P.2d 270 (1942) (relief under a contract theory was not allowed when person accepted testamentary benefits with knowledge that the will and the contract were wholly inconsistent).

The next question is whether Mr. Metz possessed a property interest in the Linden Drive house when he died or whether his interest was transferred to appellant through their contract. If the district court was correct in finding that he had a property interest in the house at death, then the IRS can attach a federal tax lien on the property. However, if appellant is correct in stating that the doctrine of equitable conversion gave her legal title when she initiated the contract with Mr. Metz in 1976, then the federal tax lien could not attach to the house.

■ Although the application of federal liens to property is a question of federal law, determining whether such a property interest exists is done under state law. *See United States v. Wingfield,* 822 F.2d 1466 (10th Cir., 1987). Appellant's argument, therefore, hinges on the Kansas state courts' application of equity law principles to a contract to devise land in exchange for lifetime services.

Appellant attempts to equate her lifetime service contract with an installment purchase agreement arguing that equitable conversion occurs if the agreement is subject to specific performance. Appellant correctly asserts that *Frisbie v. Director of Taxation,* 1 Kan.App.2d 416, 566 P.2d 29 (1977), and *Matter of Estate of Hills,* 222 Kan. 231, 564 P.2d 462 (1977), apply the doctrine of equitable conversion to installment purchase agreements for the sale of real estate. Both cases hold that a real estate contract transfers the seller's interest in the real estate to the buyer when the contract is made, not after all the installment payments are made. The interest retained by the seller is a personal property interest for purposes of inheritance taxes.

■ Appellant cannot, however, superimpose the rationale of *Frisbie* and *Hills* over the facts of the present case. Under Kansas law, the transfer of property by will in exchange for lifetime service does not transfer title when the contract is made. Kansas cases hold that the transfer of the owner's interest in property occurs when the contract is completed—namely when the owner of the property dies. *See State v. Mollier,* 96 Kan. 514, 152 P. 771 (1915) (discussed below). If the owner of property were to breach the contract by selling the property during his or her lifetime, the person performing the services would be entitled to the value of the services performed, not to the property itself. *See In Re Ray's Estate,* 180 Kan. 634, 306 P.2d

190, 192 (1957); *Anderson v. Anderson,* 75 Kan. 117, 88 P. 743, 746 (1907).

*State v. Mollier* typifies these principles. The *Mollier* facts are similar to those now at issue. Louis Mollier, a Catholic priest, entered into an agreement with his niece whereby he would bequeath all his property to her in his will if she agreed to "look after his welfare as long as he lived." His niece moved in with him and cared for him during the remaining twenty years of his life.

When the will was probated, the niece argued that the property she inherited in return for her services was not taxable as part of the estate. Making an argument identical to that now made by Janet Metz, she claimed she acquired the property from her uncle by contract and "that the will was merely the means agreed upon by which to convey to her the legal title to property which had already become hers when Louis Mollier died." *Mollier,* 152 P. at 771. She based her claim on opinions by the court which applied equity principles to enforce contracts involving the execution of a will. The *Mollier* court cited an excerpt from *Schoonover v. Schoonover,* 86 Kan. 487, 121 P. 485 (1912), to demonstrate the doctrine of these cases:

> "Where one has rendered personal services to another under an oral agreement for compensation by the devise of real estate, the contract may be enforced irrespective of the question of possession, where the services are of such a character that their money value cannot be satisfactorily estimated."

*Mollier,* 152 P. at 772 (quoting *Schoonover,* 121 P. at 486). The niece argued that because the contract was enforceable in equity, she could qualify as a bona fide purchaser for consideration and be exempted from inheritance taxes under the Kansas inheritance statute.

The Kansas Supreme Court disagreed. The statute at issue imposed an inheritance or succession tax on all property

> "which shall pass by will or by the laws regulating intestate succession, or by deed, grant or gift made in contemplation of death, or made or intended to take

effect in possession or enjoyment after the death of the grantor, to any person, absolutely or in trust—except in case of a bona fide purchase for full consideration in money or money's worth."

*Mollier,* 152 P. at 771 (quoting R.S. 79–1501). The court held that the bona fide purchaser exception applied "solely to transfers by deed or grant." *Id.* at 772. The fact that the twenty years of service might be sufficient consideration under the contract was not relevant to application of the statute.

The court distinguished the niece's case from the *Schoonover* line of cases because the niece's contract with her uncle was properly executed when the transfer of property was included in the will. In addition, although *Schoonover* enforced the contract in equity, the court stated that

> "the property itself [in *Schoonover*] was subject to probate as belonging to the deceased at the time of his death, and was liable for his debts, and that these were a *lien upon the property prior to any rights of the promisee.*"

*Id.* (emphasis added). Even personal services contracts enforced in equity are subject to probate.

Although § 79–1501 of the Kansas inheritance laws was repealed in 1978, the *Mollier* rationale is still applicable under the present inheritance statute. *See* Kan.Stat. Ann. § 79–1547 ("The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his or her death."); Kan.Stat.Ann. § 79–1551 (where possession or enjoyment of the property can be obtained only by surviving the decedent, and the decedent retained a reversionary interest, the property is included in the value of the gross estate). *See also Matter of Estate of Saroff,* 229 Kan. 446, 625 P.2d 458 (1981) (if possession or enjoyment of the property was dependent upon or certain to be delayed until at or after the death of the grantor, grantor retains an interest requiring inclusion of the property in his estate). The fact that *Mollier* involved application of an inheritance tax instead of an estate tax does not change the effect on

Mr. Metz's proprietary interest. Both taxes are imposed after death. *See Russell v. Cogswell,* 151 Kan. 14, 98 P.2d 179 (1940) (federal estate tax is a tax on the right to transfer property at death and state inheritance tax is a tax on the right of the distributee to receive the property).

Once it is established that Mr. Metz at his death had a proprietary interest in the house, the federal estate tax lien can attach to the property at his death. 26 U.S.C. § 2031 provides that the value of the decedent's gross estate shall include the value of the decedent's real and personal property at the time of death. The estate tax lien under 26 U.S.C. § 6324(a)(1) attaches on the date of death to the value of the gross estate. Because we agree with the district court that the contract created no equitable interest in favor of the appellant until Mr. Metz died, we do not address the government's argument regarding applicability of 26 U.S.C. §§ 2036 and 2037.

Appellant obtained her property interest in the Linden Drive house when D. Otis Metz died, not before. Accordingly, the federal estate tax lien attached to the property. The IRS is entitled to foreclose on appellant's house to recover outstanding estate taxes due on the D. Otis Metz estate.

Appellant does not qualify as a "purchaser" under 26 U.S.C. § 6324(a)(2), exempting her from the lien, because she received the property as a beneficiary. The property was not transferred to her by a surviving tenant, person in possession, or beneficiary "who receive[d] or ha[d] on the date of the decedent's death, property included in the gross estate...."

The judgment of the district court is AFFIRMED.