**Harry D. HASTINGS, Plaintiff,**

v.

**Patricia SAIKI, Administrator, Small Business Administration, and Russell Berry, Defendants.**

Civ. A. No. 92–F–713.

United States District Court, D. Colorado.

March 11, 1993.

970

John W. McKendree, Deana L. Vogel Goodman, Law Offices of John McKendree, Denver, CO, for plaintiff.

Michael J. Norton, U.S. Atty., Chalk S. Mitchell, Asst. U.S. Atty., Denver, CO, for defendants.

## ORDER REGARDING DISPOSITIVE MOTIONS

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving allegations of gender and age discrimination. This matter comes before the Court on Defendants' motions for summary judgment and dismissal. Jurisdiction is based on 28 U.S.C.A. § 1331. The litigants have fully briefed the matter. For the reasons stated below, the motion is GRANTED.

### I.

Plaintiff, Harry Hastings, began work with Defendant Small Business Administration ("SBA") on or about August 1976 in the Denver Regional Office.[1] From August 1980 until his retirement from the federal government in December 1986, Hastings was employed by the SBA as a Surety Bond Officer in the Surety Bond Division of the Regional Office. Hastings' responsibilities in the surety bond program included reviewing surety bond applications and making recommendations either to accept or reject the applications. The applications and Hastings' recommendations were then reviewed by Hastings' superiors who would then make their own recommendations for accepting or rejecting the applications.

The performance of SBA employees was evaluated on the Performance Management Appraisal System ("PMAS"). PMAS ratings were used in decisions on bonuses, promotions, and merit raises. The supervisor of each SBA employee bore responsibility for preparing the employee's PMAS rating. The PMAS system required employees to receive notification of their ratings on "critical elements" and "performance standards" at the beginning of each rating year.[2] Part of Has-

---

1. All factual recitations in this Order have been alleged in the litigants' pleadings.

2. Critical elements were those areas of an employee's performance which were to be objectively measured and considered in the employee's

tings' complaint revolves around the tardiness with which he received his PMAS notifications. Further, when Hastings was notified of the proposed critical elements, he disagreed with all three. He also disagreed with his subsequent rating, claiming the computer data contained inaccuracies and his supervisors had also used incorrect figures. He believed these errors affected his performance ratings, including the calculation of his turnaround time in processing applications.

Until February 1983, Hastings' immediate, first line supervisor was Senior Surety Bond Officer Helen Edwards.[3] Edwards was transferred to the Denver District Office after filing numerous complaints for sex and age discrimination against the SBA and several individuals, including Hastings. On or about April 1984, Defendant Russell Berry was transferred from the Central Office in Washington, D.C. to the Denver Regional Office where he became Hastings' first line supervisor.

In February 1985, Edwards prevailed on portions of her sex discrimination case, and in May of that year she was transferred back to the Denver Regional Office's Surety Bond Division. Edwards once again became Hastings' first line supervisor and Berry was moved to Hastings' second line supervisor and Edwards' immediate supervisor. Hastings claims after Edwards' return to the bond surety program, she began subjecting him to various forms of hostile treatment, including delays in reviewing his work that caused his performance evaluations to suffer and public abuse of Hastings in the presence of his coworkers.

In December 1986, Hastings made two requests to enter a trial retirement program he believed to have resumed after a brief suspension. His requests were denied based on a memorandum of understanding between the SBA and the American Federation of Government Employees union stating that trial retirement was still being held in abeyance. Hastings applied for reconsideration but before the SBA responded, he retired effective December 31, 1986, citing intolerable working conditions. He filed formal administrative Equal Employment Opportunity ("EEO") complaints on May 20, 1986; July 21, 1986; July 28, 1986; and October 8, 1986. The complaints raised a number of issues revolving around sex and age discrimination, most implicating Edwards. He filed two more complaints in December 1986 and January 1987 but neither was accepted.

In July 1987 Hastings was notified that certain issues he had raised in the complaints would be dismissed as untimely filed. The dismissal was later upheld by the Equal Employment Opportunity Commission ("EEOC"). The SBA also consolidated the four administrative EEO complaints which it had accepted and notified Hastings that it would investigate the alleged denial of overtime, interference with his job performance, emotional outbursts by Edwards, the unacceptable PMAS critical elements, his low PMAS rating, and Berry's refusal to allow him to attend the surety bond conference.

On August 23, 1991, the SBA mooted some issues and adopted the recommendation of an administrative judge to dismiss the remainder. Following Hastings' appeal, the EEOC ruled the SBA had ignored Hastings' alleged constructive discharge issue and remanded it to the SBA for EEO counseling. The EEOC subsequently affirmed the SBA's decision to dismiss all other issues.

Hastings filed this action in federal court on April 15, 1992. He claimed he had been discriminated against in his eligibility for overtime work, the administration of his PMAS, and his working conditions, working environment, and general terms and conditions of his employment. Hastings also alleged constructive discharge as well as reprisal in Defendants' retaliation for his filing of discrimination complaints. Defendants moved for summary judgment on January 21, 1993, claiming Hastings had failed to estab-

PMAS rating. Performance standards were the criteria established to determine ratings for each critical element. The critical elements and performance standards of Hastings related primarily to the volume and speed of surety bond applications processing.

3. Edwards was originally named as a defendant in this case but was dismissed following her death in May 1992.

lish a prima facie case of sex or age discrimination.

## II. Summary Judgment Standard

■ Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States*, 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.*, 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.*, 758 F.Supp. 630, 631 (D.Colo. 1990).

■ In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson*, 757 F.Supp. 1152, 1155 (D.Colo. 1990). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 889 (10th Cir.1991).

■ In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

■ Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan*, 931 F.2d 636, 639 (10th Cir. 1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

## III.

■ In order to prevail in an individual disparate treatment case, a plaintiff must generally satisfy a three-pronged test adopted by the Tenth Circuit in *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1260 (10th Cir.1988) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. Second, once the plaintiff establishes her prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Finally, if the defendant is able to advance such a reason, the plaintiff has the burden of proving the defendant's reason is merely a

pretext for discrimination. The plaintiff has the ultimate burden of proving a defendant treated him less favorably than others because of his age or sex. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

## A. Prima Facie Discrimination

 To prevail upon a claim of disparate treatment based on age or sex, a plaintiff must establish a prima facie case of discrimination by showing (1) the plaintiff was a member of the protected class[4]; (2) the plaintiff was adversely affected by a personnel action; (3) the plaintiff's performance was satisfactory; and (4) persons outside the protected class were not adversely affected by the personnel action. *Id.* at 253–54, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at 1824. The plaintiff must produce either direct or circumstantial evidence from which a fact finder could reasonably conclude that the employer intended to discriminate in reaching the employment decision. *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir.1988). Although the prima facie standard originated in the context of Title VII, it has also been adopted for cases brought under the Age Discrimination in Employment Act ("ADEA"). *Oscar Meyer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). In alleging age discrimination, a plaintiff must also show that his age was a determining factor in the employer's decision. *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990).

Beginning with the third criterion, we note that Hastings' performance appears to have been more than satisfactory. Defendants point out that he generally received performance evaluations ranging from above average to the highest possible score. Hastings has satisfied the third criterion. We will address the remaining criteria in the context of Hastings' specific claims.

### 1. Constructive Discharge and Reprisal

Hastings claims he was "forced into a 'trial retirement' in order to escape the discrimination and harassment" of Defendants. Defendants state the Court lacks jurisdiction over Hastings' claim of constructive discharge because Hastings failed to exhaust his administrative remedies. Hastings claims that in his fifth EEO complaint, filed in December 1986 and apparently "not accepted," he alleged constructive discharge. He notes that on December 26, 1991, the EEOC ruled he had raised the constructive discharge issue but that the SBA had ignored it. The EEOC remanded the issue to the agency. Nevertheless, after the remand, the SBA stated the issue was untimely. It appears as if Hastings has a colorable claim he exhausted his administrative remedies. We will not dispose of the constructive discharge claim as untimely.[5]

 In order to show constructive discharge in a discrimination context, a plaintiff must show the employer " 'by its illegal discriminatory acts had made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.' " *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir.1990) *quoting Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir. 1986). The key phrase here is "by its discriminatory acts." We do not believe Hastings has met his burden of showing that any actions by Defendants were discriminatory.

 Federal antidiscrimination laws do not require that employers treat all employees equally, *McDonnell,* 411 U.S. at 800–01, 93 S.Ct. at 1823–24; *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *Clark v. Atchi-*

---

4. For Hastings' claims of sex and age discrimination he must show, respectively, that at the time of the incidents he was a male and he was over the age of 40. Defendants concede Hastings satisfies both requirements.

5. To the extent the constructive discharge is alleged to be the result of Defendants' retaliation, we also note that "[w]hen the complaint filed in the district court alleges that the employer has retaliated against the employee for filing a discrimination claim with the EEOC, courts have uniformly held that the employee need not exhaust administrative remedies on the retaliation claim." *Haynes v. Mark,* 520 F.Supp. 1183, 1184 (D.Colo.1981).

son, Topeka and Santa Fe Ry. Co., 731 F.2d 698, 702 (10th Cir.1984), or even fairly, Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 487 (10th Cir.1991). The laws exist, rather, to prevent employers from discriminating on the basis of race and gender, id, as well as age. To establish a prima facie case of illicit discrimination, a plaintiff must produce evidence of discriminatory intent or motive on the part of the defendant. Patterson v. McLean Credit Union, 491 U.S. 164, 186–88, 109 S.Ct. 2363, 2377–79, 105 L.Ed.2d 132 (1989); International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–1855, 52 L.Ed.2d 396 (1977); Clark, 731 F.2d at 702. While a plaintiff need not show that a defendant was personally prejudiced against the plaintiff, some evidence of individualized disparate treatment or statistical disparity is necessary. McAlester, 851 F.2d at 1260.

■■■ Hastings relies on statements he made in his deposition and affidavits in concluding that "the emotional outbursts of his supervisor, the failure of the agency to address issues of concern to Hastings, the failure of the agency to provide appropriate evaluations of his performance and other forms of disparate treatment to which Plaintiff Hastings was subjected did in fact make his working conditions intolerable." Hastings does indeed describe in detail what appear to be highly undesirable working conditions. Nowhere, however, does Hastings suggest any facts tying those working conditions to his age or sex. Hastings does not dispute Defendants' assertion that his supervisor, Edwards, had personality conflicts with most or all of the people with whom she worked. It also appears that she had running battles with Hastings; Berry stated in his deposition that both Edwards and Hastings continually went to him to complain about each other, prompting Berry to investigate and mediate their disputes. Berry Depo. at 57–8, 84–5, 99–103, 112.

■■■ Hastings does not adduce any reason for a finder of fact to infer that Defendants possessed not merely intent to make his work miserable, but discriminatory intent or motive. The former is an unfortunate occurrence in the workplace; only the latter provides a cause of action under Title VII and the ADEA. Hastings asserts "Defendants have given no legitimate nondiscriminatory reason for the intolerable state of Plaintiff Hastings' work life," but Hastings fails to suggest, as he must, a prima facie discriminatory reason in the first place.

■■■ For example, in McAlester, the plaintiff was able to point to specific examples in the workplace where white employees who violated similar rules were merely suspended, while minority employees were terminated. 851 F.2d at 1260. In Chaney v. Southern Ry. Co., 847 F.2d 718, 722 (11th Cir.1988), a black plaintiff discharged as a result of his positive drug test met his prima facie burden by showing the defendant had discovered white employees possessing or using marijuana without also discharging them. On the other hand, a plaintiff's conclusory allegations of discrimination may be insufficient to raise an issue of fact on summary judgment. See, e.g., Smith v. American Express Co., 853 F.2d 151 (2nd Cir.1988) (plaintiff's unsupported and ultimately rebutted allegation that an inferior candidate was promoted in his place failed to show that employer's stated reasons were mere pretext); Meiri v. Dacon, 759 F.2d 989 (2nd Cir.), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment appropriate where plaintiff merely alleged subjective bias on part of supervisor and could not describe with specificity any of the alleged disparaging remarks about Jews).

Hastings' constructive discharge claim must therefore be dismissed.

■■■ Hastings also claims that he was subject to reprisal for filing his various discrimination complaints. To establish a prima facie case of unlawful reprisal, he must show:

(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer contemporaneously or subsequent to the employee's protected activity; and (3) a causal connection between such activity and the employer's action.

Williams v. Rice, 983 F.2d 177 (10th Cir. 1993); Allen v. Denver Public School Board, 928 F.2d 978 (10th Cir.1991).

■ Defendants concede Hastings satisfied the first element of opposition to discrimination by filing his complaints. However, he has alleged no adverse action[6] taken, after May 1986, as a result of his complaints and his claim of reprisal must therefore be dismissed.

### 2. PMAS Performance Evaluations of 1985 and 1986

■ Hastings asserts that his PMAS notification was tardy and that the completed evaluations were plagued with errors which were not later corrected by the SBA. However, Hastings does not dispute that all employees received their PMAS notifications late. He has therefore made out no claim of disparate treatment in the first instance. Hastings next claims that his low evaluation and the gross inaccuracies in the calculation of his turnaround time were discriminatory acts by the SBA. Hastings admitted in his deposition that it was possible the errors were beneficial to him; further, he did not know if other employees had been somehow exempted from the errors. Hastings Depo. at 145–46. Hastings also does not deny that he received a positive rating,[7] though he notes that women in the department had their ratings adjusted upward by Berry while his own were not adjusted even after he notified his superiors of the errors. We note that the women's ratings adjustment, however, was done only with regard to a clerical processing critical element that was not part of Hastings' evaluation. No ratings common to both Hastings and other employees were adjusted.

However, even if Hastings were able to make out a prima facie case on these facts, it is undisputed that no women's ratings were adjusted due to the *errors;* rather, all employees were stuck with their errors. The two women who received adjustments did so because of a large influx of work outside their control. Berry Depo., Dec. 29, 1992, at 180. The SBA has thus borne its burden of giving a nonpretextual reason for any disparate treatment. In addition, the employees whose ratings were adjusted were not similarly situated to Hastings. Finally, we note that even if Hastings had received undeserved ratings, he has not shown any adverse effect from them.

### 3. The 1986 Surety Bond Conference

■ Hastings brought up for the first time in his deposition, rather than his complaint, the issue of being excluded from a surety bond conference in 1986, despite his attendance in previous years. Edwards and Berry were chosen to attend the conference, as was Jerry Carroll, who Hastings alleges had only minimal connection to the conference. The object of Hastings' grievance over his exclusion from the surety bond conference is unclear. In his deposition, he claims Berry should not have gone in his place, while in his response brief he states Berry's attendance was justifiable but Edwards should not have gone. In any event, the Court can hardly consider as evidence of discrimination the fact that Edwards, a woman, went and Hastings, a man, did not; even so, the SBA has explained that it sent Edwards and Berry based on the future responsibilities they would have for developing and implementing a computer program for use in the Denver Regional Office. Carroll's travel funds did not come from the Surety Bond Division budget because he was not in the division. Finally, it is clear that all three conference participants were Hastings' superiors. Hastings was therefore not similarly situated to those who went and the SBA has given a legitimate nondiscriminatory reason for not sending him.

---

6. Indeed, some of the actions alleged by Hastings to have been adverse—regarding bonuses, for example—were not contained in the complaint and, furthermore, occurred in 1984, *before* Hastings filed any of his EEO discrimination complaints. The complaint's only allegations of actions taken by Defendants after May 1986 were Hastings' July 14, 1986 meeting with Edwards and Hastings' September 5, 1986 evaluation, in which he received his usual above-average ratings. Neither of these actions were alleged to have been adverse and, in any event, Defendants has given adequate nondiscriminatory reasons for both of them.

7. Hastings received the highest possible rating on one critical element and the second-highest on the other.

### 4. Trial Retirement, Overtime, Performance Awards, and General Working Conditions

Hastings' other claims of discrimination suffer from the same lack of connection shown between his age and gender and his treatment as do his other claims. First, even if Hastings' interpretation of the enforceability of the trial retirement program had been correct, he has alleged nothing more than the fact he was denied trial retirement. He does not connect this denial with his age or sex. Hastings also admits he was the first employee to apply for trial retirement and cannot show that such retirement was granted to anyone, much less someone outside the protected class, after his departure.

Second, in the context of his overtime claim, Hastings is unable even to show that he was treated differently from similarly situated employees. He does not dispute that the policy on overtime was generally to have clerical workers do clerical work, all supervised by a supervisor. The fact that Hastings filled in for Edwards in performing overtime work on occasion does not change the fact that he was the only non-clerical, non-supervisory employee in the Surety Bond Division. It is simply not relevant to the question of whether Hastings suffered a uniquely disparate treatment that other employees in the division, not similarly situated, worked overtime, or that employees in other divisions worked overtime.

Third, Hastings also claims that Berry's failure to recommend him for performance awards despite his high performance ratings is indicative of discrimination. Aside from a vague allegation that a person outside the protected class received the performance award, Hastings offers no facts supporting any inference of discrimination.

Finally, Hastings states he was subject to Edwards' false accusations of incompetence, her emotional outbursts, her threats to lower his ratings, and the SBA's refusal to take action on these matters. Hastings allows that Edwards "did mistreat other surety bond employees, but not to the same degree that she mistreated Plaintiff Hastings." We again note that mistreatment alone does not make out a case for gender or age discrimination.

In all of Hastings' claims, he appears to maintain that solely because his supervisor was female, he was over forty, and he was mistreated, he was somehow discriminated against on the basis of sex and age. The only proof Hastings offers of the SBA's discriminatory intent in sex discrimination is that he was male and his supervisor was female; likewise, the only evidence he provides for his claim that the SBA discriminated against him on the basis of age is the fact that his supervisor was *older* than he. Hastings Depo., Dec. 11, 1992, at 105. Nowhere does Hastings even mention the younger workers' ages, nor does he show that he was treated differently from them. Nowhere is gender or age alleged in a nonconclusory way to have been the basis for employment decisions. Without some showing of either discriminatory impact or intent, Hastings is unable to distinguish himself from any other employee who comes away from a job dissatisfied with his treatment. Hastings has failed to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial'" on every element challenged by Defendants' motion. *See Celotex Corporation,* 477 U.S. at 324, 106 S.Ct. at 2553. Hastings has not satisfied his prima facie burden.

### B. Legitimate, Nondiscriminatory Reason versus Pretext

We further find upon our review of the pleadings that to the extent Hastings could have made out a prima facie case, Defendants have more than adequately provided nondiscriminatory reasons for all of their actions.

### IV.

Accordingly, it is ordered that:

(1) Defendants' Motion for Summary Judgment, filed January 21, 1993, is GRANTED.

(2) The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants and against Plaintiff.

(3) Defendants' Motion to Dismiss Defendant Berry, filed January 21, 1993, is MOOT.

(4) Plaintiff's Motion to Strike Defendants' Reply Brief of March 2, 1993, or, in the Alternative, Certain Attachments Thereto, filed March 3, 1993, is GRANTED IN PART. Attachments R–6, R–7, R–8, and R–9 shall be STRICKEN from the Reply Brief of March 2, 1993.

(5) All parties to bear their own costs.